## Shreiner *versus* Cummins.

1. In reviving a debt barred by the statute, the debtor may impose conditions by which the creditor will be bound.

2. In a promise to pay a barred debt, the consideration is the moral obligation only and the assumption is wholly voluntary on the part of the debtor.

3. Shreiner and Cummins sold land to each other, agreeing that if either tract fell short the seller was to make it up. More than six years afterwards Shreiner sold another tract to Cummins, and stipulated "that an alleged deficiency in the land traded between" them is to be submitted to "Cunningham, and if any balance be found against Shreiner it is to be a credit on the land (last) sold." *Held*, that this was a new undertaking, and the claim for deficiency in the first sale was not barred by the statute.

4. The contract was a sale of land, of which the agreement for the deficiency was a material part.

5. It was to be enforced not as the revival of a barred debt, but as an original contract.

6. Interpreting the last contract with the first, "the land traded" refers to that conveyed in the first.

7. The *whole* value of the deficiency under the first contract was to be a credit on the purchase-money of the second.

8. Cummins was entitled to a verdict for the excess of the deficiency over the purchase-money.

[Shreiner v. Cummins.]

9. The reference to Cunningham was but a mode of ascertaining the sum; Cunningham having died, the debt was not to be considered extinguished, but must be left to the judicial tribunals.

10. Cunningham's death being the act of God the parties were not injured by it.

11. Potter v. Sterrett, 12 Harris 411, remarked on.

November 22d 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of Beaver county: No. 222, to October and November Term 1869.

This was an action of covenant, to September Term 1867, brought by Charles H. Shreiner against Samuel P. Cummins for the balance of purchase-money on a tract of land sold by Shreiner to Cummins. The facts which gave rise to the controversy are these:—

On the 7th of July 1858 Shreiner conveyed to Cummins two tracts of land in Beaver county. It appeared that on the same date Cummins conveyed land to Shreiner. At the same time the parties entered into this agreement in writing, but not under seal:—

"We do hereby agree that if either of the undersigned wishes to survey the land purchased from the other, he can do so; and in case either tract overruns, the buyer is to pay for the overplus, and if either falls short, the seller is to make it up."

On the 10th of December 1864 Shreiner by articles sold to Cummins a tract of land in Wisconsin for $1050; the purchase-money to be in part discharged by the payment by Cummins of certain liabilities of Shreiner specified in the articles. The articles contained this additional stipulation:—

"It is also agreed that an alleged deficiency in the measure of the land traded between Shreiner and Cummins, is to be submitted to Hon. Thomas Cunningham; his decision to be final; and if any balance should be found thereon against Shreiner, said balance is also to be a credit for Cummins on said 160 acres of land sold by this agreement."

Cummins paid the liabilities of Shreiner as agreed upon in the articles; this left a balance still due Shreiner; for that balance this action was brought. Cummins alleged that on a survey which had been made of the land, in Beaver county, sold by Shreiner to him there was a deficiency in the quantity, the value of which he claimed to set off against Shreiner's claim under the covenant.

The court charged:— * * *

["The plaintiff contends that the Statute of Limitation had barred any claim which the defendant might have had against the plaintiff for a deficiency in the quantity of the land conveyed by the deed of 7th July 1858, and that there is not that explicit recognition of the original contract and promise to pay for said

deficiency in the article of agreement of the 10th December 1864 which would take the case out of the statute and enable the defendant to recover. Whether it be true or not that the defendant's claim founded on the writing of 7th July 1858 was barred at the date of the Wisconsin article, we are of the opinion that the parties intended by the clause in the article to which we have referred, to revive the claim and give it the same force and effect it originally had.] It is one of the terms of the Wisconsin agreement that the alleged deficiency in the Beaver land should be ascertained and settled, and this may have been the inducing cause with the defendant to enter into it. .

["But the plaintiff further objects that the parties undertook to create a tribunal of their own for the determination of this disputed question, and that the defendant therefore cannot claim ‚to have it inquired into and settled in this suit. Hon. Thomas Cunningham, to whose final arbitration it was submitted, died without having heard the parties or making an award. The act of God injures no one, and the law will remit the parties to the proper legal tribunal to settle their rights.] It is further urged by plaintiff that the defendant can only make use of his claim, under his plea of set-off as a *credit* against the purchase-money remaining unpaid in the contract." * * * ["The plaintiff asks us to instruct you that you can apply the estimated value of this deficiency only by way of credit to reduce or defeat the plaintiff's cause of action, but that the defendant cannot recover for any excess to which he might otherwise have been entitled, by means of a certificate at your hands. We think, however, that such an interpretation would be too narrow to fulfil the intention of the parties." * * *

" Taking into view the original writing accompanying the deed and its subsequent recognition in the agreement of December 10th 1864, we are of opinion that to limit the defendant's claim upon his set-off by what may now be due on the article, and deny him the right to hold the plaintiff accountable in this suit for all that the deficiency in the land may be fairly worth, would not accord with the true intent and meaning of the contract. We therefore instruct you that if you believe the evidence, the defendant is entitled to recover the whole amount of his set-off, to be applied first, to the balance of the purchase-money coming to the plaintiff on the contract, and for what may remain the defendant is entitled to a certificate in his favor."]

The jury found for the defendant and certified in his favor for $——.

The plaintiff took out a writ of error and assigned for error the parts of the charge embraced in brackets.

*L. Taylor*, for plaintiff in error.—There was something to be

[Shreiner v. Cummins.]

done by Shreiner, and it should have been done within six years: Morrison v. Mullin, 10 Casey 12; Laforge v. Jayne, 9 Barr 410; Railroad v. Graham, 2 Grant 259. The article of December 10th 1864 did not revive the promise; it had not specific reference to the claim or the amount of indebtedness: Huff v. Richardson, 7 Harris 388. A conditional promise is available only when it is shown that the condition has been performed: 2 Parsons on Contracts 350; Graham v. Keys, 5 Casey 189; Nelson v. VonBonhorst, Id. 352. A cross-demand must be complete when the action is instituted: Pennel v. Grubb, 1 Harris 552. As to the reference to Cunningham the power was terminated by his death: Potter v. Sterrett, 12 Harris 411; Marseilles v. Kenton, 5 Id. 238.

*H. Hice* and *S. B. Wilson*, for defendant in error.

The opinion of the court was delivered, January 31st 1870, by
Agnew, J.—We do not doubt that in reviving a debt barred by the Statute of Limitations the debtor may impose conditions by which the creditor will be bound. In a promise to pay a debt barred by the Statute the consideration is the moral obligation only, and the assumption wholly voluntary on part of the debtor. He may, therefore, make terms. But is that this case? The undertaking here was not one of mere revival. It is a part of a new and independent agreement for a different and a valuable consideration—one not pre-existing, and concurrent in time with the new contract. The transaction was a sale of land by Shreiner to Cummins, of which the agreement for the deficiency was a material part. *Non constat* that Cummins would have bought had not Shreiner agreed to credit the deficiency in the former sale. The agreement being new and for a different subject, this part of it must be viewed, as a material and essential element in the contract, to be enforced not as the mere revival of a barred debt, but as an original contract, and hence the only question before us is its interpretation. The subject-matter of this clause is simply referred to, not described; and is therefore to be ascertained by evidence *de hors* the writing. What land was traded between these parties? What alleged deficiency had been claimed? These questions are not answered by the agreement. Therefore the parties must resort to evidence *aliunde*, and in this way the agreement of 1858 is introduced into the case as the inducement, which led to this clause in the contract of 1864. The explanatory evidence being in, it throws light on the interpretation of the new agreement. Now it is clear that by the agreement of 1858 the parties made the price of the deficiency a debt to be refunded by express terms. Certainly it was this debt which was referred to Mr. Cunningham to ascertain; for it was the alleged deficiency in the measure of the

[Shreiner *v.* Cummins.]

land traded, he was to report upon. It was not a part of the deficiency, but the whole of it, he was to determine. Then if any balance should be found against Shreiner, it was that balance, the whole sum thus ascertained, that was to be the subject of the credit. The subject of the contract of 1864 in this respect was undoubtedly the same as that of 1858. The parties meant by the agreement of 1858 that the whole deficiency should be paid for. Did they mean less than this in 1864 ? If they did it was most natural that they should express it, but they did not. They meant the whole deficiency to be a credit on the new purchase. But it turns out that the deficiency is greater than the unpaid balance of the agreement of 1864, and cannot all be credited. Is the excess to be lost to Cummins ? Certainly not, unless this was plainly the intention of the parties. But how can we say this, when they evidently contemplated the ascertainment of the deficiency as a whole, and not as a part only; and provided that the whole sum found should be credited. It is not contended that less than the whole should be credited, if the balance unpaid on the agreement of 1864 were sufficient to absorb the whole. Then what have we to convince us that less than the whole debt should be paid? The credit was but a means of payment, and doubtless the parties supposed that the balance on the agreement of 1864 would absorb it, but the intention to provide for the whole deficiency is too palpable, when this provided means of payment fails in part, to authorize us to reject the excess, and say it cannot be recovered. If the intention to sink the excess were apparent, we would be bound to follow it, but not being so, we must hold that the evident intention to pay for the whole deficiency in measurement, cannot be controlled by the accidental fact that the credit on the agreement of 1864 will not absorb the whole.

The deficiency being thus recognised as a debt to be paid, the reference to Mr. Cunningham was but a mode of adjusting the sum. Hence his death, which was an act of God, is not to be considered as extinguishing the debt, but its ascertainment, being thus prevented by the act of God, must be left to the judicial tribunals of the country if the parties cannot agree upon another mode. The question in Potter *v.* Sterrett, 12 Harris 411, was upon the award. Death of an arbitrator without provision for substitution, ended the power to award, and of course the award fell. But here the question is—did the debt survive ? We think it did, and it was only the means of determining its amount which failed, and this being providential the parties are not injured by it.

Judgment affirmed.